I concur with all the majority opinion, except for two phases of it, as to which I dissent, i.e., (1) reversing and remanding to the lower court on whether or not LaPlause Polk, father of Kawanis, should be required to afford her support, tuition and expenses for college education and, (2) remanding the case as to Marcus Polk for the purpose of determining whether or not his custody should be granted to Erma J. Polk, appellant and mother of Marcus.
As to Kawanis Polk, Hambrick v. Prestwood, 382 So.2d 474
(Miss. 1980) and Pass v. Pass, 238 Miss. 449, 458-59,118 So.2d 769, 773 (1960) control. In Hambrick quoting Pass, the Court said:
 "[W]e hold that where the minor child is worthy of and qualified for a college education and shows an aptitude thereof it is the primary duty of the father, if in reason financially able to do so, to provide funds for the college education of his minor child in the custody of the mother, where the mother and father are divorced and living apart." (emphasis added).
Hambrick 382 So.2d at 477, (quoting Pass v. Pass, 238 Miss. 449, 458-59, 118 So.2d 769, 773 (1960)).
After quoting the above principle from Pass, Justice Harry Walker for the Court in Hambrick set forth that Cynthia, daughter of the parties, was nineteen years of age and desired to attend Mississippi State University in September 1979, and that her father should be required to pay for her tuition, travel expenses, necessary clothing and other incidental expenses. Cynthia's testimony indicated that she had not had any contact with her father for six or seven years and did not want to have any contact with him; that she disliked him, categorizing it as close to "hate"; that she would not visit her father; that when she entered Hinds Junior College, she did not list Hambrick as her father but listed her parents as Mr. and Mrs. J.T. Prestwood. Under those circumstances, the Court was of the opinion, and so held, that the father should be relieved of any further obligations to support or educate that nineteen-year-old young lady.
The attitude and actions of Kawanis toward her father, LaPlause Polk, have been much more egregious than that in Hambrick. In addition to her actions in having nothing to do with her father and demeaning him to anybody who would listen, including Polk's brothers, sisters and other members of his family, Kawanis wrote a despicable letter to the brothers and sisters of her father expressing hate and contempt for him. Excerpts of the letter follow:
Dearest Relatives,
 I would like to inform you of the most low-down and dirty things that our father *Page 132 
(your Brother) has done to his children.
 . . . .
 He has managed to take our pride, dignity, and now our roof right from beneath us [sic]. How Cruel!!! Marcus and I, refuse to, at any point or time after this, call or acknowledge that he is our father/daddy, or any other superior male figure. He is out of our lives.
 . . . .
 Mr. LaPlause Polk now has given us now [sic] choice in life. He is no kind of a man.
 . . . .
 He deserves to be whipped, then incarcerated and the key thrown deep into the Mississippi River.
 . . . .
 He abandoned us — not we abandoned him [sic]. For that we are treated this way. He has hurt us, scared us for life, and made a total fool of himself.
 . . . .
 We are sadden [sic] that LaPlause has sunken to such levels to make us a part of the nation's statistics (Homeless, abused, and neglected). For ten years, playing with our lives. All evidence shows the truth about him — he does give a damn of what happens to any of his kids. As you know, God does not tolerate wrong-doers in his kingdom. And I know LaPlause Polk will not make it to heaven. He will "rot" in hell for everything that he has done to cause this chaos.
Kawanis also delivered a proposed news item to the local county paper entitled "HEADLINE: FATHER'S EVICTION LEAVES CHILDREN HOMELESS" which she tried to get published.
Kawanis was eighteen at the time of the trial and is nineteen now. The ball is in her court and she should make some effort for reconciliation between her and her father. Time is of the essence. If she has sincerely changed her attitude, it probably would effectively change the position of Mr. Polk. At any rate, in my opinion, the chancellor is not manifestly wrong in his decision of applying the law, but is manifestly correct.
As to Marcus, he was twelve years old at the time of trial and is now fourteen. I recognize the fact that when a child becomes fourteen, he has a mind of his own with reference to choosing one parent against another. It is difficult to enforce an order of custody. However, the chancellor has had long and wide experience in child custody matters. He saw and heard the parents and Kawanis and Marcus testify. I am of the opinion that he acted in the best interest of Marcus. Certainly, he was not manifestly wrong in his decision that the custody of Marcus should remain in his father. Therefore, I would affirm the learned chancellor.
For the reasons stated, I dissent.
DAN M. LEE, P.J., and McRAE, J., join this opinion.